**ÆTNA LIFE INS. CO. v. McADOO.**
No. 11307.

Circuit Court of Appeals, Eighth Circuit.

Sept. 12, 1939.

Rehearing Denied Oct. 9, 1939.

S. Lasker Ehrman, of Little Rock, Ark. (J. Paul Ward, of Batesville, Ark., and Grover T. Owens and E. L. McHaney, Jr., both of Little Rock, Ark., on the brief), for appellant.

Shields M. Goodwin, of Little Rock, Ark., and S. M. Casey, of Batesville, Ark., for appellee.

Before STONE, WOODROUGH, and THOMAS, Circuit Judges.

STONE, Circuit Judge.

This is an appeal by a life insurance company from recovery on a policy on the life of Alonzo D. McAdoo brought by the individual beneficiary in the policy. The appeal is from the Eastern District of Arkansas.

The insured was an employee of the Batesville Grocery Company. On October 7, 1935, defendant delivered "wholesale" policies of life insurance to the employees of the company. McAdoo's policy recited his wife as beneficiary. The policy provided that it should terminate if the insured ceased to be an employee, but gave the privilege of conversion into a nonparticipating policy for a like amount

620

"without further evidence of insurability". During September, 1936, McAdoo received such a converted policy wherein appellee, his daughter, was made sole beneficiary.

This action is upon the converted policy. However, the issues have to do solely with the validity of the original policy. The company admitted the policies, payment of premiums, the death and due proof of death. It relied for defense upon the claimed violation of a provision in the original policy that "This policy shall not become effective until the first premium upon it is paid *during the good health of the insured*" (italics added). It defended upon the ground that the original policy never became a contract for two reasons: First, that the insured was not in good health when the policy was delivered and the first premium paid; and second, that between the date of application for the policy and the date of its delivery the insured became aware of certain conditions with reference to his health which affected the risk and that he failed to inform the appellant of those conditions at or before the delivery of the policy.

The company assumed the affirmative because the two above defenses were of that character. It introduced its evidence and thereafter the plaintiff introduced two witnesses who testified to the effect that the insured had all the appearance of being in good health at the time the policy was delivered. At the close of this evidence plaintiff moved for a directed verdict which was granted by the court and judgment entered thereon.

Appellant presents here eight points. The first of these is the claimed error in directing the verdict. This contention is not based entirely upon the evidence which was introduced and admitted but upon such evidence as materially added to by certain other evidence which was excluded and which appellant contends should have been admitted. In this situation, this first point is entirely dependent upon the other seven points, all of which have to do with the exclusion of evidence offered by the company.

■ The first point of evidence is that the court erred in excluding the proofs of death. Since there was no issue as to death or as to the furnishing of proper proof thereof, the only materiality of this proof of death and the purpose for which it was offered was to show certain statements therein which the company asserted were against interest and which tended to support the above defense issues. This proof of death was admissible, both by Federal and State decisions, as a statement against interest under the authority of Watkins v. Reliance Life Ins. Co., 152 Ark. 12, 17, 238 S.W. 10, 12; Watkins v. Metropolitan Life Ins. Co., 158 Ark. 386, 395, 250 S. W. 350, 353; Travelers' Ins. Co. of Hartford v. Melick, 8 Cir., 65 F. 178, 187, 27 L.R.A. 629.

■ The next item of evidence is the exclusion of a physician's certificate attached to the proof of death and sent with it by appellee. The purpose of the offer of this statement was the same as for offering the proof of death. There is doubt as to how this matter should be ruled. While the general doctrine is that such statements are admissible (Aetna Life Ins. Co. v. Ward, 140 U.S. 76, 90, 11 S.Ct. 720, 35 L. Ed. 371; the decisions in sixteen States as shown in the notes to 17 A.L.R. 366, and 96 A.L.R. 331), yet the Arkansas decision of Fidelity & Casualty Co. v. Meyer, 106 Ark. 91, 152 S.W. 995, 44 L.R.A.,N.S., 493, seems to the contrary. However, the Arkansas case is based upon the theory that such a statement is excluded by the Arkansas statute of privilege (Pope's Digest, § 5159), and that such statement was not, in the policy there involved, required by the insurance company as a part of the proof of death. The policy requirement here is "due proof of the death". Just what constitutes due proof is not defined, but this proof was made upon forms submitted by the company so that it may be assumed that those forms constituted what the company regarded as constituting due proof. Since appellee furnished this certificate without objection, it is fair to assume that she acquiesced in the view of the company as to it being properly included within the policy requirement of "due proof of death" and waived any privilege. This form of proof is made up of two numbered sheets, sheet No. 2 being entitled "Proofs of Death submitted to Aetna Life Insurance Company * * * No. 2 Physician's Statement". It would seem that if this physician's statement is within the requirement of the policy as to "due proof", that it was admissible, otherwise not. A solution of this rather doubtful matter may be avoided, however, because the statement

itself contains nothing prejudicial to the appellee. It really makes no difference whether it had been admitted or not. If there was error in its exclusion that error was harmless.

■ The next matter of evidence is the exclusion of various statements made to appellee by the insured as to his state of health at various times prior to the issuance of the original policy and thereafter. This evidence is not admissible under the decisions of Arkansas. It would be admissible under the rule announced by this Court, in an appeal from the Eastern District of Arkansas, in Self v. New York Life Ins. Co., 8 Cir., 56 F.2d 364, 366, since the policies sued on gave the insured the right to change beneficiary. As a practical matter, we need not resolve this conflict in decision. This is so because, for other reasons stated in this opinion, the case must be remanded and, on retrial, will be subject to Rule 43(a) of the new Rules of Civil Procedure for the District Courts, 28 U.S.C.A. following section 723c. Under that Rule, such evidence will be admissible

■ The next item is the exclusion of the hospital records at the Memphis hospital and the testimony of Dr. Chisholm concerning those records. These had to do with the examination and treatment of the insured. They were, obviously, privileged under the above statute of Arkansas (Pope's Digest, § 5159). The question here is whether that privilege had been waived by the beneficiary. In Arkansas the beneficiary can waive such a privilege. Maryland Casualty Co. v. Maloney, 119 Ark. 434, 178 S.W. 387, L.R.A.1916A, 519; Metropolitan Life Ins. Co. v. Fitzgerald, 137 Ark. 366, 209 S.W. 77.

■ The question here as to the existence of a waiver takes the form following. After the death and while the company was investigating the claim without any indication that it would not be paid, it asked appellee for consent to examine these hospital records, the adjuster telling her that the local doctors who treated her father would give him information without formal authorization but the doctors in Memphis and the hospital would not without such authorization and that it was a matter of form. On this representation she gave waiver as follows:

"Baptist Memorial Hospital
"Memphis
"Tennessee.
"Dear Sir:

"I hereby authorize and direct you, and each of you and/or any physician or surgeon in your employ or associated with you in any way, to give to Aetna Life Insurance Company, at any time requested, any and all information they may desire and which may have been acquired by you, or any of you, and/or such physician or surgeon or associate, in attending my father Alonzo D. McAdoo in a professional capacity, and I hereby waive, as to the Aetna Life Insurance Company all provisions of law prohibiting any physician or surgeon who has attended Alonzo D. McAdoo from disclosing any information thereby acquired."

The controversy is as to whether this waiver was a limited one for the purposes of adjustment and settlement of the claim or was general and covered use of that information in a suit involving the policy. It would seem that this matter is ruled against the company by Fidelity & Casualty Co. v. Meyer, 106 Ark. 91, 152 S.W. 995, 44 L.R.A.,N.S., 493.

■ Another point is the claimed error of the court in striking out certain evidence of a hearsay character when it was later discovered that it was of that character. The court had a discretion in acting at the time it did. However, since the evidence so stricken consisted largely of the statements made to appellee by her father as to the condition of his health and which have been treated above, there is (in view of what has been said hereinbefore as to such statements) no point in determining whether the court wisely exercised its discretion in striking out the answers.

■ Another matter is the contention of appellant that the court refused to treat as evidence a part of the opening statement of attorney for appellee to the effect that the insured had consulted Dr. Hooper, on October 4, 1935, for hemorrhoids and was treated by him on several occasions thereafter. An opening statement by a counsel is pertinent, but not conclusive, as a matter of evidence. Best v. District of Columbia, 291 U.S. 411, 415, 54 S.Ct. 487, 78 L.Ed. 882; Oscanyan v. Arms Co., 103 U.S. 261, 26 L.Ed. 539; Wiget v. Becker, 8 Cir., 84 F.2d 706; Illinois Power & Light Corp. v.

Hurley, 8 Cir., 49 F.2d 681; Smith v. O'Brien, 66 App.D.C. 387, 88 F.2d 769; Hilliard v. Pennsylvania R. Co., 6 Cir., 73 F.2d 473; Anderson v. Missouri State Life Ins. Co., 6 Cir., 69 F.2d 794; Lehigh Valley R. Co. v. McGranahan, 2 Cir., 6 F.2d 431; Park Falls Lumber Co. v. Burlingame, 7 Cir., 1 F.2d 855; Houk Mfg. Co. v. Cowen Co., 2 Cir., 267 F. 787; Smith v. Standard Sanitary Mfg. Co., 2 Cir., 254 F. 427. Whether St. Louis Iron Mountain & Southern R. Co. v. Bearden, 107 Ark. 363, 155 S.W. 499, is opposed, is doubtful (see Millsaps v. Nixon, 102 Ark. 435, 144 S.W. 915). At any rate, this case must, for other reasons, be remanded and, on retrial, Rule 43(a) of the new Rules will be then applicable. As to the effect of this evidence—an admission that insured had hemorrhoids at the time of delivery of the policy—see Harper v. Bankers' Reserve Life Co., 185 Ark. 1082, 1085, 51 S.W.2d 526.

[3] Another point is the claimed error in excluding a hypothetical question to medical experts. The questions were properly subject to objection upon the evidence then admitted by the court as each of them, obviously, contained many essential facts which were not in such evidence. Whether the questions would have been proper had the excluded evidence been admitted is not before us.

The final item of evidence is the exclusion of certain parts of the testimony of Lewis B. Codding, Jr. This excluded evidence consisted of questions based upon evidence not admitted under the record as it stood. When the questions were asked the exclusion was proper. Whether the questions would be unobjectionable under another state of the record on re-trial is not before us.

The parties argue here the question as to whether the provision in the policy for delivery thereof "during the good health of the insured" is to be construed as meaning good health in fact or an honest belief by the insured that he was in good health at that time. Since the verdict was directed for the beneficiary, we have no need to determine that matter now. For the above errors in exclusion of evidence, the case must be remanded and we will assume that the trial court will, on retrial, apply the proper rule of construction as announced by the Supreme Court of the State of Arkansas.

The judgment is reversed and the case is remanded for retrial.