## HUGUENOT YACHT CLUB v. UNITED STATES.

District Court, S. D. New York.

Feb. 21, 1940.

Chadbourne, Hunt, Jaeckel & Brown, of New York City (Alfred H. Phillips, of New York City, of counsel), for plaintiff.

John T. Cahill, U. S. Atty., Southern District of New York, of New York City (Noel Hemmendinger, Asst. U. S. Atty., of New York City, of counsel), for defendant.

HULBERT, District Judge.

Plaintiff seeks a refund of taxes paid to the government.

Both sides have moved for summary judgment on the pleadings and the depositions of two of plaintiff's officers, Storck and Lasher.

There is no substantial issue of fact.

The sole issue is whether certain fees collected by plaintiff were admission charges.

Sec. 500(a) (1) of the Revenue Act of 1926 as amended by Section 711(a) of the Revenue Act of 1932, 26 U.S.C.A.Int.Rev. Acts, reads: "There shall be levied, assessed, collected, and paid * * * A tax of 1 cent for each 10 cents or fraction thereof of the amount paid for admission to any place * * * to be paid by the person paying for such admission except that in case the amount paid for admission is less than 41 cents, no tax shall be imposed."

Section 500(c) of the Revenue Act of 1926, 26 U.S.C.A.Int.Rev.Code, § 1704, reads: "The term 'admission' as used in this title includes seats and tables, reserved or otherwise, and other similar accommodations, and the charges made therefor."

Section 502(a) of the Revenue Act of 1926, 26 U.S.C.A.Int.Rev.Acts, reads: "Every person receiving any payments for such admission * * * shall collect the amount of the tax imposed by section 500 * * * from the person making such payments."

Plaintiff is a non-profit membership corporation (organized under the Laws of the State of New York) maintaining a club house on Long Island Sound at New Rochelle, New York, and additional facilities, chiefly for bathing, on Pea Island, some three miles distant off shore for the accommodation and use of its members and guests. This island, which has a small bathing beach, of an approximate area of two acres, is equipped with bath houses, lockers, living quarters for a lifeguard, and volley ball court and a soft drink concession.

The Rules of the Club for the years 1934 and 1935 provided:

"G. A guest charge of 50 cents for all days of the week except Saturdays, Sundays and Holidays, will be made for the use of the Island Station. The charge for Saturdays, Sundays and Holidays will be 75 cents. Children 6 to 12 years will be 25 cents at all times. Only members and those holding 'Member's Family Guest Cards' shall be exempt from the Island Station charge.

"J. Guests transported to the Island by other than the Club launches, and using the Island facilities, are subject to guest charges."

It appears that this latter rule was not enforced because the number of people who may have violated it was less than one-half of one per cent of the total number of visitors to the Island.

During the year 1936 the Club Rules provided:

"7. A charge of 50 cents will be made for all guests for the use of the Island Station on all days except Saturdays, Sundays and Holidays, when a charge of 75 cents will be made. Children, 6 to 12 years of age, will be charged for at the rate of 25

cents at all times and no charge will be made for children under 6 years.

"9. Guests transported to the Island Station by other than Club launches are subject to guest charges for the use of the facilities of the Island Station."

The Club maintained two launches carrying, respectively, 40 and 60 persons for the purpose of transportation between the clubhouse and the Island Station.

The statement of comparative receipts and expenses in evidence discloses:

| Revenue | 1934 | 1935 | 1936 |
|---|---|---|---|
| Dues | $12,555.00 | $12,792.50 | $13,340.00 |
| Initiation Fees | 2,025.00 | 1,650.00 | 2,125.00 |
| Guests Charges | 2,342.50 | 2,415.75 | 2,368.00 |
| Expenses | | | |
| Shore Station | 4,403.55 | 4,210.79 | 5,161.15 |
| Pea Island | 3,210.55 | 2,600.32 | 3,013.42 |
| Pea Island Transportation | 2,512.11 | 2,104.44 | 2,361.15 |

The "guest charges" and "Pea Island Transportation" are approximately equal so that the guests received substantially the same service at the Island Station as the members without any other charge than the total costs of transportation of all persons carried to and fro.

In March, 1937, plaintiff paid the Deputy Collector of United States Internal Revenue $925.55 to cover the admissions tax at the rate of 1 cent for each 10 cents charged for transportation of guests, which, with interest and penalties, amounted to that sum. Application for refund was filed forthwith and rejected and the institution of this action followed.

Were the fees for the account of guests transported to and from the Island Station "paid for admission to any place"? Article 2 of Regulations 43 (June, 1932) declares that the basic idea which "place" conveys "is that of a definite location." The use of a swimming pool owned by a private club has been held taxable, St. 859, Cum.Bull. 1937-1, p. 334, 3 P.-H. 1940 Fed. Tax Serv. Par. 29,107-A, and also where the pool was commercial. Twin Falls Natatorium v. United States, D.C., 22 F.2d 308. Likewise in the case of a skating rink, United States v. Koller, D.C., 287 F. 418. In those cases the pools and rink respectively were places specifically definite as to location and use.

On the other hand the Treasury Department has held that the charge made for speedboat rides in an open lake or stream was not taxable as an admissions charge. Vol. 3 C.C.H. Fed. Tax Serv. 39, page 4893 (July 28, 1932).

More analogous is the exemption of the "greens fees" of a golf course, usually the only charge made to enable a guest to play. It certainly is a "place of definite location." But Article 3 of Regulations 43 says: "The term 'admission' means the right or privilege to enter into a place * * *." Sales Tax Ruling 357, I.R.Cum.Bull. I-1, p. 434, holds, "The 'greens fees' of a golf club are not taxable as admissions," and in the same ruling, discussing a tax on dues, it is stated, "Admissions to a golf club, namely, designated as 'greens fees' are in no circumstances taxable as admissions under Section 800." (Act of 1921, which contains language identical with that pertinent to this proceeding.)

The government urges that "greens fees" are exacted for the privilege of "playing" and not "being" there, and contends the facts in the case at bar are strikingly similar to Chimney Rock Co. v. United States, 63 Ct.Cl. 660, certiorari denied 275 U.S. 552, 48 S.Ct. 115, 72 L.Ed. 421. In that case the owner of a natural park and a private road three miles in length leading to it collected a fee from all persons passing a point on the road about half a mile from the park. The road was the only improved road, but other roads and trails led to the park, and persons using them were not charged. The court held the fees taxable as against the contention that they were charges for the use of the road.

The readily distinguishable factors are that the park was open to everyone indiscriminately and that no method of transportation was furnished to persons who were required to pay toll at a station maintained for that purpose.

The government admits that the charges for guests were in part, at least, a transportation expense but states the plaintiff never asserted a claim to have an apportionment.

Giving consideration to the items in the comparative statement (Exhibit 4), the transportation expense represents at least half of the combined charges, and the transportation charge equals at least half of the amount collected. Since the charge on weekdays was only 50 cents and 75 cents on Saturdays, Sundays and Holidays, the portion of the charge attributable to admissions is less than 41 cents, in which event the statute under consideration provides that no admissions tax shall be imposed. I am not deciding the case upon that ground but refer to it to indicate that

the equities are with the plaintiff, as I do determine the law to be upon the facts of this case, and grant plaintiff's motion for summary judgment in its favor.

Submit findings of fact and conclusions of law and decree.[1]

---

[1] It is recommended that counsel examine a recent article by U. S. District Judge Gunnar H. Nordbye, "Improvements in Statement of Findings of Fact and Conclusions of Law," 1 F.R.D. 25.